Case 4:23-cv-02528   Document 26   Filed on 10/30/24 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
October 30, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAVID A. REED, § | |
| § | |
| *Plaintiff,* § | |
| VS. § | CIVIL ACTION NO. 4:23-cv-2528 |
| § | |
| AUSTIN FIRE SYSTEMS, LLC, § | |
| § | |
| *Defendant.* § | |

## ORDER

Pending before the Court is David A. Reed's ("Plaintiff") Motion for Summary Judgment, (Doc. No. 18), to which Austin Fire Systems, LLC ("Defendant") has responded in opposition, (Doc. No. 20). Plaintiff filed a reply. (Doc. No. 21). Also pending before this Court is Defendant's Motion for Summary Judgment. (Doc. No. 17). Plaintiff responded in opposition, (Doc. No. 19), and Defendant replied in support, (Doc. No. 22). Notably, while each motion prays for a judgment in favor of the movant, their grounds are somewhat different, and so they are not what are traditionally considered cross-motions.

Having considered the motions, relevant pleadings, and summary-judgment evidence, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment. (Doc. No. 18). It also **DENIES** Defendant's Motion for Summary Judgment. (Doc. No. 17).

**I.     Background**

While some facts are certainly disputed, the general factual scenario—especially as to the background of the relationship—is essentially undisputed. Plaintiff worked as Director of Safety Services at DNOW, a publicly traded company and, in that role, was familiar with the safety services industry. (Doc. 18-1 at 11:18–25). Defendant was in the business of fire suppression services. (Doc. No. 17 at 2). It was considering expanding its business line into the safety service

market so it could also provide items like breathing equipment, instrumentation, monitors and fall protection equipment. (*Id.*).

Plaintiff parted ways with DNOW at some point in 2018—at the same time Defendant was looking to expand into the area in which Plaintiff had expertise. (Doc. No. 18-1 at 32:14–37:5). Consequently, sometime in late 2018, Plaintiff and Russell Ritchie ("Ritchie"), Defendant's president, entered negotiations for Plaintiff to join Defendant and help launch this venture. (*Id.*). This new line would require significant investment by Defendant, and the plan was to pay Plaintiff in a manner contingent on Defendant's monthly revenue as the new venture progressed. (Doc. No. 17 at 2–3). Eventually, Plaintiff filled out Defendant's standard employee paperwork, and, on January 7, 2019, Defendant extended him a formal offer of employment. (*Id.* at 3). It is the wording of this offer from which much of the dispute originates.

In pertinent part, the offer letter states:

## Austin Fire Systems

January 7, 2019
Dave Reed
Subject:        Employment Offer

Compensation Plan

96,000 annual salary (until monthly revenue reaches 100K)
160,000 annual salary thereafter
Health Insurance per employee handbook
401K-Per employee manual
Vehicle Allowance: $750,000 monthly, gas card for business use

(Doc. No. 18-4).

Plaintiff accepted this offer and began work on January 12, 2019. (Doc. No. 17 at 4). Plaintiff was paid monthly at the specified rate of $96,000 annually for the remainder of 2019 and

2

into the early part of 2020. *See* (*id.*). The dispute begins, however, when, in early 2020, the Safety Division started reaching the $100,000 monthly revenue threshold mentioned in the offer letter. (Doc. No. 18 at 2). While it is unclear from the summary-judgment evidence provided, it appears that this threshold was met occasionally in 2020, and that, by February 2021, this Division routinely met this threshold and maintained this level throughout the remainder of Plaintiff's tenure (which ended in late 2022). (*Id.* at 2–3).

Plaintiff maintains that the above-quoted offer and his acceptance constitutes a contract. (*Id.* at 3). That being the case, he argues, once monthly revenues of the Safety Division exceeded $100,000, he should have been paid at the annual rate of $160,000 for those months, instead of $96,000. (*Id.* at 4). He claims this happened sporadically in 2020 and regularly through 2021 into 2022. (*Id.* at 2–3). Plaintiff also contends that he was not given this promised increase until the end of February 2022. (*Id.* at 3). Thus, Plaintiff claims Defendant breached its contract with him and owes him approximately $5,900 per month for each month that the Division's revenue exceeded $100,000 but where his salary was calculated on the $96,000 annual rate instead of the $160,000 figure. (*Id.* at 5).

Defendant takes a bifurcated approach in response. It does not deny that the July 7, 2019, letter constituted an offer that Plaintiff accepted. (Doc. No. 20 at 6). Instead, it parses the offer letter into subparts. While it concedes the offer of employment was indeed a contract offer that was accepted, Defendant focuses on the fact that the compensation terms fell under the heading of "Compensation Plan." Thus, Defendant argues that those figures were part of a non-binding "plan." It maintains that the plan could and did change and that Plaintiff acquiesced in the change. (*Id.* at 6–8). In support of this stance, Defendant relies on an affidavit from Ritchie. Ritchie maintains that he never intended the figures mentioned in the offer letter to be binding, that he

3

always intended Plaintiff's pay to be a reflection of the unit's profitability, and, most importantly, that Plaintiff agreed with his lower salary figures—proven by the fact that he continued to work for the lower salary. (Doc. No. 20-3 at 1–2).

Defendant's own motion expands on this third argument. It contends that "the undisputed facts establish that AFS [Defendant] consistently denied Plaintiff's request for a raise—because the business segment Plaintiff ran was not profitable—with Plaintiff assenting to his salary level by continuing to work for AFS after the company's unequivocal refusals [to raise his salary per the offer letter]." (Doc. No. 17 at 1). In other words, Defendant in its motion contends as a matter of law that Plaintiff, an employee at will, agreed that the salary figures in the "Plan" were not binding and/or ratified Ritchie's change of those figures by continuing to work for Defendant after Ritchie refused to match the terms of the offer letter. Plaintiff denies these contentions and argues that a contractual modification requires a meeting of the minds and that he never agreed. (Doc. No. 19 at 4).

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex Corp. v. Catrett*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about

a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable fact finder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the court to the pertinent evidence, and its location, in the record that the party things are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir 2003). It is not the duty of the court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Analysis

#### A. Contract Formation

Under Texas law, an offer is "a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promise in understanding that a commitment has been made." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W. 2d 501, 502 (Tex. 1998) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2(1)). To prove that an offer was made, a party must show that "(1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree." *Matter of Texxon Petrochemicals, L.L.C.*, 57 F.4th 259, 265 (5th Cir. 2023) (citing *Domingo v. Mitchell*, 257 S.W. 3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied)).

The intent is determined based on "the objective standard of what the parties said and did and not on their subjective state of mind." *Gallier v. Woodbury Financial Servs., Inc.*, 171 F. Supp. 3d 552, 567 (S.D. Tex. 2016) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)). Moreover, the terms "must be sufficiently definite . . . so that a

court can understand what the promisor undertook." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "In the context of employment agreements, typical essential terms include, among others, 'compensation, duties or responsibilities'" *Martin v. Credit Prot. Ass'n Inc.*, 793 S.W.2d 667, 669 (Tex. 1990).

The Court finds the existence of a contract between Plaintiff and Defendant. The objective intent is made clear by the subject line of the email: "Employment Offer." Such intent is further evinced by Defendant's payment of and Plaintiff's acceptance of $96,000 as his initial annual compensation in accordance with the offer letter. Moreover, all of the essential terms existed—compensation ($96,000 per year, with a possible raise to $160,000), duties ("[D]eveloping a new safety branch of our company."), and responsibilities ("Your responsibilities will include the following."). Those terms were sufficiently definite that this Court can understand what the promisor undertook: to provide compensation as outlined under the "Compensation Plan." Thus, a valid offer existed.

With the offer established, the issue becomes whether Plaintiff accepted. Plaintiff admits that he cannot produce evidence of a signed agreement to support the theory of a bilateral contract. (Doc. No. 18 at 3 n.16). He argues, however, that he prevails even under a unilateral contract theory because he performed. (*Id.* at 4). "Unlike a bilateral contact, in which both parties make mutual promises, unilateral contract is created when a promisor promises a benefit if a promisee performs." *City of Houston v. Williams*, 353 S.W.3d 128, 135–35 (Tex. 2011).

The record shows that Plaintiff accepted this offer and went to work five days later. When he began, he was paid the very sum stipulated in the written offer ($96,000). This remained the case over one year. It was only when the sales started to exceed the specified threshold ("monthly

revenue of 100K") that the relationship began to experience problems. Nevertheless, all parties agree that Defendant eventually paid Plaintiff the agreed-upon $160,000.

Defendant argues that the terms of the offer letter were indefinite, and thus, there was no valid offer. (Doc. No. 20 at 6). While the Court remains unconvinced that the terms were indefinite, even if that were true, that argument does not help Defendant because the parties' performance supports a finding of an implied-in-fact contract. An implied-in-fact contract "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607 (Tex. 1972). In implied-in-fact cases, courts "must look to the conduct of the parties to determine the terms of the contract on which the minds of the parties met." *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 557 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The conduct and circumstances surrounding the transaction are to be viewed from a reasonable person's interpretation at that particular point in time. *Id.* at 557–58.

Here, even without a signed express contract, the circumstances surrounding the transaction compel the finding of an implied-in-fact contract. Plaintiff began working for Defendant, and Defendant paid. The terms of that contract clearly include the salary of $96,000 per annum (the amount that Defendant initially paid) and the eventual raise to $160,000 (the amount that Defendant eventually paid) after the "monthly revenue reaches 100K." That is because Plaintiff's work began after the offer, and, at least initially, Plaintiff was paid per the compensation described in the offer. Moreover, while a dispute exists as to the timeliness of the increase to $160,000, Plaintiff was eventually paid that sum. The Court finds there was a contract that included the compensation terms specified therein. Ritchie's subjective (and unvoiced) intent does not affect this conclusion.

Thus, this Court finds as a matter of law that a contract existed between the parties—express or implied. Moreover, the compensation set out in the January 7, 2019, offer letter was part and parcel of that contract. Defendant could not unilaterally change the terms of the employment agreement.

### B. Contract Modification

#### i. General Rule

Having found that a contract exists, the Court turns to whether it was modified. In an at-will employment context, either party may impose modifications to the employment terms as a condition of continued employment. *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986). The burden to prove modification lies with the party asserting it. *Id.* "Generally, when the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit." *Id.* If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law. *Id.* From this arises the two requirements of modification: (1) notice of the change; and (2) acceptance of the change. *Id.* Since Plaintiff continued to work after he was initially denied the raise, the sole issue is whether he had notice.

#### ii. Notice of the Change

"To provide notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Id.* To have knowledge of a modification, "the employee must know the nature of the changes and the certainty of their imposition." *Id.* This certainty of imposition is generally met by ultimatums that expressly condition the employees' continued employment on the acceptance of the new terms. *See, e.g., In re Halliburton Co.*, 566 S.W.3d 566, 569 (Tex. 2002); *City of Odessa v. Barton*, 967 S.W.2d 834, 834 (Tex. 1997); *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

Conversely, if the employer equivocates on the imposition of the requirement, such as through contradictory statements, there is no effective notice. *Hathaway*, 711 S.W.2d at 229; *Moran v. Ceiling Fans Direct*, 239 F. App'x 931, 937 (5th Cir. 2007).

In *Halliburton*, the Supreme Court of Texas held that the modification of employment terms to include an arbitration provision was valid. 80 S.W.3d at 567. There, Halliburton sent notice to all employees—including the at-will employee in question—adopting the arbitration provision. *Id* at 568. The notice informed the employees that "by continuing to work after January 1, 1998, they would be accepting the new program." *Id*. Even though the plaintiff claimed he "only briefly looked at the documents and that he did not understand them," the Court held that Halliburton effectively notified the employees. *Id*. That is because "[t]he notice explained the program, stated its effective date, and explained that by working after that date an employee would indicate that he or she accepted the provision." *Id.*

On the other hand, in *Hathaway*, the Supreme Court of Texas held that equivocation invalidated any purported modification. 711 S.W.2d at 229. There, General Mills proposed lower commission rates for the plaintiff. *Id*. at 228. The plaintiff testified that a General Mills manager "told him to discuss the changes with" the plaintiff's superior. *Id*. at 229. That superior, in turn, told him that he would "take care of the problem." *Id*. When General Mills sent the plaintiff a letter laying out the new terms, the superior "again told [the plaintiff] not to worry and that [he] would take care of it." *Id*. Thus "[t]hese conflicting signals from General Mills' managers make unequivocal notification a jury question." *Id*.

The Court finds there is a material issue of fact as to this dispute. On the one hand, where division revenue started to peek over the $100,000 threshold, Plaintiff immediately raised the issue but, Defendant claims, was made aware he was not getting the raise specified in the offer letter.

9

On the other hand, Plaintiff testified that he felt "push[ed] . . . off," rather than getting the definitive imposition of new terms as required by *Halliburton. See* (Doc. No. 18-1 at 99:15–18) ("And it was always just kind of push me off and say, we've got to get to this or we need to do this or whatever the business is, the business is not good, we are in COVID."). These circumstances and the summary-judgment evidence supporting each side clearly create a fact issue that must be resolved by a jury.

### IV. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment. (Doc. No. 18). It finds the existence of an employment contract that was, at least initially, to pay Plaintiff a $96,000 annual salary until the safety services division achieved monthly revenue of $100,000. Once that threshold was reached, Plaintiff's compensation was to be raised to an annual salary of $160,000.

However, a genuine issue of material fact exists as to whether the parties modified the contract once the revenue threshold was reached. Thus, the Court **DENIES** Defendant's Motion for Summary Judgment. (Doc. No. 17).

Signed on this 30th day of October 2024.

Andrew S. Hanen
United States District Judge